IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

CENTURY III MALL PA LLC, : ELECTRONICALLY FILED
 :
  Plaintiff, :
 : CIVIL ACTION NO. _____
  v. :
 :
SEARS ROEBUCK AND CO. :
 :
  Defendant. :

## COMPLAINT

Plaintiff Century III Mall PA LLC ("Century III" or "Landlord"), by and through its attorneys, brings this action against Sears Roebuck and Co. ("Sears" or "Tenant") to vacate a November 10, 2016, Arbitration Opinion and Award ("the Award" or "Opinion"), to obtain relief from the remedy awarded therein, and to stay enforcement of the Award pending this Court's determination as to its validity.

**I. NATURE OF THE ACTION**

1. Plaintiff Century III is the Landlord and Sears the Tenant under a May 29, 1979, Lease Agreement for anchor space at the Century III Mall (the "Mall") in Pittsburgh (the "Lease"), a true and correct copy of which is attached as Exhibit "A".

2. The Lease contains explicit terms describing the process for the Landlord to exercise an election to purchase the Tenant's leasehold improvements in the event the Tenant ceases operations at the Mall. The process set forth in the Lease required submission by the parties of appraisals of the fair market value of the leasehold improvements.

3. The Lease also contains a limited arbitration clause stating that in any arbitration the arbitrators "shall have no power to change any terms of this Lease or deprive any party of

any right provided for herein or modify or extinguish any obligation of either party imposed hereby." Exhibit "A" at § 34.

4.      Following an exchange of appraisals, Sears initiated arbitration proceedings, resulting in the November 10, 2016, Arbitration Award attached as Exhibit "B" (the "Award").

5.      This Complaint seeks to vacate the Award because the arbitrators exceeded their powers, rendering an Award that cannot be rationally derived from the Lease because it changed the terms of the Lease and deprived Century III of its express rights under the Lease. In sum, the arbitrators irrationally re-wrote the lease to reach the result set forth in the Award.

## II.   PARTIES

6.      Plaintiff Century III is a Pennsylvania limited liability corporation with its principal place of business at 9101 Alta Drive, Suite 1801, Las Vegas, Nevada 89145. Century III has been the owner of the Mall located at 3075 Clairton Road, West Mifflin, Pennsylvania and the Landlord under the Lease from approximately 2013 to the present.

7.      Defendant Sears is a Delaware corporation with its principle place of business at 3333 Beverly Road, Hoffman Estates, Illinois 60179. At all relevant times Sears was the Tenant under the Lease.

## III.  JURISDICTION AND VENUE

8.      This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because the parties to this action are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

9.      Venue is proper in the United States District Court for the Western District of Pennsylvania pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or

omissions giving rise to the claim occurred in this judicial district, including issuance of the Arbitrator's Opinion and Award on November 10, 2016. *See* Exhibit "B".

## IV.    BACKGROUND OF THE ARBITRATION

### A.    The Lease

10.    The contract at issue is a Lease for Sears to occupy an anchor store at the Mall.

11.    The Lease was entered into on May 29, 1979, with an initial term of forty years, running from October 6, 1980 to October 31, 2020.

12.    For the first fifteen years after the store was built, the Lease provided that Sears must use and operate the space as a Sears department store. Exhibit "A" at §6.1.

13.    The Lease provided that for the next five years, Sears must use and operate the space as a department store, under any name. *Id.*

14.    The combined twenty-year time period – the first half of the initial term of the Lease – is described in the Lease as the period of "Tenant's operating covenant."

15.    The Lease does not provide Sears with an option to terminate, but provides that if Sears intends to discontinue the operation of a department store, it must give Century III written notice, and Century III may discontinue the Lease. Exhibit "A" at §6.3.

16.    Section 6.3(b) of the Lease sets forth two different scenarios for determining the transaction price if Century III elects to terminate the Lease.

17.    The two different transaction prices in Section 6.3(b) vary depending on whether or not the Lease is terminated during the twenty-year period of Tenant's operating covenant or after the expiration of Tenant's operating covenant.

18.     In the first twenty years of the Lease, when the building is newer and can be more easily rented again, Section 6.3(b)(i) provides the Tenant with a more beneficial valuation (i.e., a valuation of the "Building and Improvements") if Landlord elects to terminate the lease.

19.     If termination occurs after the expiration of Tenant's operating covenant, the valuation is less generous to Tenant (i.e., only the "leasehold improvements" are valued), because the value of the leasehold interest to Tenant has declined over the years (e.g., because the Tenant has less time left to use/sublet the property).

20.     The leasehold interest valuation method also incentivizes the Tenant to better maintain the property in the latter half of the initial term of the Lease, because leasehold improvements (e.g., carpeting, lighting, cabinets) that are beyond their useful life and are not replaced will have no value.

21.     Accordingly, if the Lease is terminated within the operating covenant period, i.e., in the initial twenty years of the Lease, Section §6.3(b)(i) requires that to determine the transaction price, the parties must look to both "Tenant's depreciated book value of its Building and Improvements or the appraised fair market value thereof." The appraisal process provides that each party shall appoint one appraiser, and if the appraisers cannot agree on the fair market value, then the arithmetical average of the appraisers' findings shall be deemed the fair market value.

22.     However, if the Lease is terminated after this initial twenty-year operating covenant period, then the parties must look to both "Tenant's depreciated book value or the appraised fair market value **of the leasehold improvements** made by Tenant, determined as in (i) above." Exhibit "A" at §6.3(b)(ii) [emphasis supplied].

23.     Section 6.3(c) of the Lease sets forth a method for computing "the depreciated book value of Tenant's Building and Improvements": it "shall be computed on a straight line basis in accordance with Tenant's customary method of computing book value of similar types buildings and improvements." [sic] In contrast, the Lease does <u>not</u> set forth any method for computing the depreciated book value of "leasehold improvements."

24.     The Lease contains an arbitration clause, and that clause precisely and narrowly defines the scope of the arbitrators' powers by stating "[s]uch arbitrators shall have no power to change any terms of this Lease or deprive any party of any right provided for herein or modify or extinguish any obligation of either party imposed hereby." Exhibit "A" at §34.

**B.     Sears Triggers Section 6.3 and Arbitration**

25.     On September 18, 2014, Sears provided formal notice to Century III that it would discontinue operations of the Sears store, triggering the provisions of Section 6.3 of the Lease.

26.     On November 17, 2014, Century III invoked the termination provisions of Section 6.3 of the Lease.

27.     By December 7, 2014, Sears had discontinued operations of the Sears store in the Mall.

28.     On January 23, 2015, Sears provided its appraisal in connection with the valuation process under Section 6.3.

29.     On February 12, 2015, Sears notified Century III that it would be relying solely on appraisals of fair market value in connection with the valuation process set forth in Section 6.3(b)(ii) of the Lease, and would not provide information regarding the "depreciated book value" of the leasehold improvements.

30.     On February 16, 2015, Century III provided its appraisal in connection with the valuation process under Section 6.3(b)(ii), and provided supplements and addenda thereafter.

31.     On March 9, 2015, Sears made a demand for arbitration, a copy of which is attached as Exhibit "C".

32.      Hearings were held before an arbitration panel of three arbitrators (the "Arbitrators") on June 27, 2016, June 28, 2016, and August 30, 2016, the parties submitted supporting briefs, and the Award was issued on November 10, 2016.

33.     The Award, *inter alia*, concluded that:

a)      "Building and Improvements" in Section 6.3(b)(i) had the same meaning as "leasehold improvements made by Tenant" in Section 6.3(b)(ii); Exhibit "B" at p. 6;

b)      Century III's appraisal cannot be considered; *id.* at p. 7;

c)      the Award amount should be based solely on the the book value of the "Building and Improvements" submitted by Sears; *id.* at pp. 10-12;

d)       Sears' calculation of book value of the "Building and Improvements" was in accord with generally accepted accounting principles ("GAAP"); *id.* at pp. 12-15; and

e)      the phrase in Section 6.3(b)(ii) of the Lease stating "provided, however, that if Landlord does not elect to so purchase" did not provide Century III with an election not to purchase; *id.* at p. 5.

## V.     THE LEGAL FRAMEWORK

34.     Vacatur of an arbitration award is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 –16.

35.     Generally, the FAA, "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Verve Communications Pvt. Ltd. v. Software Int'l, Inc.*, 2011 WL 5508636 *4 (D.N.J. Nov.9, 2011) (*citing Ario v. Underwriting Memb. of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 288 (3d Cir.2010)).

36.     The FAA provides four grounds for vacatur:

In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

37.     Where a party seeks vacatur on the basis that the arbitrators "exceeded their powers" pursuant to 9 U.S.C. § 10(a)(4), the Court must determine if the form of the arbitrators' award can be rationally derived from the agreement at issue. *Ario*, 618 F.3d at 295, *citing Mut. Fire, Marine & Inland Ins. Co. v. Norad Reins. Co.*, 868 F.2d 52, 56 (3d Cir. 1989).

38.     While courts may generally defer to arbitrators' holdings, "the courts are neither entitled nor encouraged simply to "'rubber stamp' the interpretations and decisions of the arbitrators." *Matteson v. Ryder Sys. Inc.,* 99 F.3d 108, 113 (3d Cir. 1996)(overturning arbitration award for going beyond the scope of authority conferred by the parties).

39.     In both Pennsylvania state and federal courts, therefore, although an arbitral tribunal may be granted authority to decide the parties' dispute, that tribunal cannot exceed the

scope of its authority. *Commonwealth ex rel. Kane v. Philip Morris USA, Inc.*, 114 A.3d 37, 58 (Pa. Commw. Ct. 2015), *appeal denied*, 129 A.3d. 1244 (Pa. 2015), and *cert. denied sub nom. R.J. Reynolds Tobacco Co. v. Kane*, 237 S. Ct. 292 (2016)("under all standards . . . the award may be vacated or corrected where the arbitrators exceed the scope of their authority").

40.    Here, where the arbitrators were strictly bound by the arbitration clause's language that they explicitly had "***no power*** to change any terms of this Lease or deprive any party of any right provided for herein or modify or extinguish any obligation of either party imposed hereby" their decision must be vacated for exceeding the scope of that authority.

41.    In particular, where the parties are asking the arbitrators to interpret a contract, "[t]he intent of the parties to a contract 'is deemed to be embodied in 'what the agreement manifestly expressed, not what the parties may have silently intended.' '" *Philip Morris,* 114 A.3d at 62-63 (quoting *Greater Nanticoke Area Sch. Dist. v. Greater Nanticoke Area Ed. Assoc.*, 760 A.2d 1214, 1219 (Pa. Commw. Ct. 2000) and *Delaware Cnty. v. Delaware Cnty. Prison Emps. Indep. Union.*, 552 Pa. 184, 713 A.2d 1135, 1138 (Pa. 1998).

42.    Therefore, if an arbitral panel "interprets unambiguous language in any way different from its plain meaning", it is "amend[ing] or alter[ing] the agreement and act[ing] without authority. *Id.* (citing *Greater Nanticoke* and *Delaware Cnty.*).

43.    An arbitration panel exceeds its authority when it "departs from the contract's terms and amends it without the agreement of all of the parties to that contract." *Commonwealth v. Philip Morris* 114 A.3d at 63.

44.    The Arbitrators' Award departed dramatically from the unambiguous terms of the Lease – and exceeded the Arbitrator's authority.

45.     The Arbitrators' scope of authority in this case is expressly cabined by the language in the Lease's arbitration clause, and the arbitration Award's alteration of the Lease's terms is an irrational error requiring vacatur of the Award.

46.      "Arbitration is fundamentally a creature of contract . . . an arbitrator's authority is derived from an agreement to arbitrate" *Puleo v. Chase Bank USA N.A.,* 605 F.3d 172, 181 (3d Cir. 2010) (limiting the scope of the parties' arbitration because the Federal Arbitration Act only requires courts to enforce arbitration agreements "in accordance with their terms.")

47.     Because the Lease's arbitration clause explicitly stated that the Arbitrators "shall have no power to change any terms of this Lease or deprive any party of any right provided for herein or modify or extinguish any obligation of either party imposed hereby," the Arbitrators were expressly precluded from issuing a decision that rewrites the lease or deprives Century III of its rights under the Lease.

## VI.    THE    MANNER    IN    WHICH    THE    ARBITRATORS    IRRATIONALLY EXCEEDED THEIR POWERS

48.     At the time of the arbitration, the Lease was in year 35 of a 40-year term, many years past the expiration of Tenant's operating covenant; as a result, the relevant section of the Lease's valuation provisions for calculating the transaction price was §6.3(b)(ii), valuing "leasehold improvements," not §6.3(b)(i), valuing "Building and Improvements."

49.     Irrationally, and in contravention of the Lease and of the parties' agreed-upon scope of arbitral issues, the Arbitrators unilaterally and incorrectly re-wrote the Lease as if "leasehold improvements made by Tenant" were the same as "Building and Improvements."

50.      Irrationally, and in contravention of the Lease and of the parties' agreed-upon scope of arbitral issues, the Arbitrators disregarded Century III's appraisal entirely, without regard to the express Lease provisions requiring use and averaging of appraised values.

51.     Irrationally, and in contravention of the Lease and of the parties' agreed-upon scope of arbitral issues, the Arbitrators based the Award solely on the book value of the "Building and Improvements," without regard to the express Lease provisions requiring comparison of the average of two appraisals to the book value of the "leasehold improvements made by Tenant" instead.

52.     Irrationally, and in contravention of the Lease and of the parties' agreed-upon scope of arbitral issues, the Arbitrators based the Award on the book value of the "Building and Improvements" without proper application of GAAP governing the manner in which such book value was required to be calculated.

53.     Irrationally, and in contravention of the Lease and of the parties' agreed-upon scope of arbitral issues, the Arbitrators disregarded the entire last clause in §6.3(b)(ii) providing that the Landlord may choose not to elect to proceed with the purchase following the §6.3(b)(ii) valuation process.

## VII.   CLAIMS FOR RELIEF

54.     Plaintiff incorporates by reference and re-alleges Paragraphs 1 though 53 of the Complaint as though fully set forth herein.

55.     As a result of the foregoing, pursuant to 9 U.S.C. § 10, enforcement of the Arbitrator's Opinion and Award should be stayed pending the Court's determination of its validity, and the Opinion and Award should be vacated and set aside, on the grounds that:

a.   The Arbitrators evidenced a manifest disregard of the terms of the Lease and issued an award totally unsupported by the principles of contract construction;

b.   The Award ignores the plain language of the Lease;

c.   The Award fails to draw its essence from the Lease;

d.   The Award is based upon an impermissible addition and/or alteration of the Lease; and

e.   The Arbitrators exceeded their power under the law and the parties' agreement to arbitrate.

56.   Century III has no adequate remedy at law, for only a judgment vacating the Opinion and Award will provide Century III with the relief required under these circumstances.

WHEREFORE, Century III respectfully requests that this Court grant judgment staying enforcement of the Award and vacating the Award in its entirety, and award such other relief as may be just and proper.

Respectfully submitted,

Dated: December 9, 2016                    By:    */s/ Stephen S. Stallings*
                                                   Stephen S. Stallings, Esquire
                                                   PA ID No. 205131
                                                   attorney@stevestallingslaw.com
                                                   The Osterling Building
                                                   228 Isabella Street
                                                   Pittsburgh, PA 15212
                                                   T: 412-322-7777
                                                   F: 412-322-7773

                                                   *Attorney for Plaintiff Century III*