IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CENTURY III MALL PA LLC )<br>    Plaintiff, )<br>)<br>                vs. )<br>)<br>SEARS ROEBUCK AND CO., )<br>    Defendant. ) | Civil Action No. 16-1839<br>ECF No. 5<br>Magistrate Judge Lisa P. Lenihan |

## **MEMORANDUM OPINION ON DEFENDANT'S MOTION TO DISMISS**

### I. **Summation**

The Motion to Dismiss filed by Defendant Sears Roebuck and Co. ("Sears"), ECF No. 5, will be granted, as the arbitration decision at issue reflects a thorough, specifically-supported and clearly-worded judgment on the commercial contract matters at issue.

### II. **Factual and Procedural History**

Plaintiff, Century III Mall PA LLC ("Century III"), as landlord, and Sears, as tenant, entered into a May 29, 1979 lease with a forty (40) year term (*i.e.*, from October, 1980 through October, 2020), pursuant to which Sears constructed and maintained an over 230,000 square foot "anchor" store as part of the Century III Mall (the "Lease Agreement"). Pursuant to Section 6.1 of the Lease Agreement, Sears was subject to an "operating covenant" requiring that the space be operated as a Sears (for the first fifteen (15) years) or other (for an additional five (5) years) department store. *See* Amended Complaint, ECF No. 3 at 3-4.

Section 6.3 of the Lease Agreement, headed "Landlord's Option to Terminate", sets forth the termination provisions as follows:

6.3(a) provides that if (as it did) Sears elects "to discontinue the operation" of a department store, Century III may (as it did), within sixty (60) days "elect to terminate this Lease and acquire the Sears Building and Improvements as hereinafter set forth", upon which acquisition the lease automatically terminates. If Century III "elects not to so terminate, Landlord and Tenant" continue to be bound by the lease.

6.3(b) then addresses valuation and potential continued other use of the space by Sears, if Sears elects to cease retail operations during (*subparagraph i*) or after expiration of (*subparagraph ii*) the 20-year operating covenant:

> (i) if termination of operation shall occur during the period of Tenant's operating covenant, as set forth in Subparagraphs 6.1 (a) and (b), Landlord agrees to pay Tenant, within ninety (90) days after exercising its election to terminate, Tenant's depreciated book value of its Building and Improvements or the appraised fair market value thereof, whichever is greater. Each party shall appoint one (1) appraiser for the purpose of determining the fair market value and in the event they cannot jointly agree upon the value, the arithmetical average of the values submitted by such appraisers shall be deemed to be the fair market value of Tenant's Building and Improvements. . . .; and

> (ii) if Tenant shall discontinue the operations of a retail Department Store after the expiration of Tenant's operating covenant . . . and Landlord exercises its option to terminate this Lease, Landlord shall pay Tenant, within ninety (90) days after exercising its election to terminate, the amount of Tenant's depreciated book value or the appraised fair market value of the leasehold improvements made by Tenant, determined as in (1) above, whichever is greater, provided, however, that if Landlord does not elect so to purchase Tenant's Building and Improvements, Tenant may use Tenants' Building for any lawful purpose.

6.3(c) provides that "the depreciated book value of Tenant's Building and Improvements shall be computed on a straight line basis in accordance with Tenant's customary method of computing book value of similar types buildings and improvements" and 6.3(d) provides for the

real estate closing to occur within ninety (90) days of Landlord's notice exercising its option to terminate the lease. *See* ECF No. 6, Ex. A at 2-3.

Sears elected to cease operation of its retail store by notice to Century III on September 8, 2014. And by reply of November 17, 2014 Century III "elect[ed] to terminate the Lease and acquire the Building and Improvements" in accordance "with Section 6.3(a)" of the Lease Agreement. *See* ECF No. 6, Ex. A at 1. Sears ceased operations on December 7, 2014 and, as of June 27, 2016, had continued to pay rent and other expenses to Century III. *See* id. at 1.

The parties exchanged appraisals, with Sears appraisal at $9,200,000 and Century III's at *negative* $11,100,000. The parties, of course, disputed each other's findings and, in accordance with Section 34 of the Lease Agreement (requiring adjudication by a three-member arbitration panel), Sears then sought arbitration through the American Arbitration Association. A tribunal of three (3) highly-credentialed arbitrators was elected (the "Panel"),[1] and hearings were held on June 27, June 28, and August 30, 2016. The evidence included the parties' appraisals[2] and Sears' spreadsheet calculation of depreciated book value of $3,937,636, with testimony that it was "calculated on a straight-line basis and in accordance with Sears' customary procedure for similar types of building and improvements" in accordance with the Lease Agreement. *See* ECF No. 6, Ex. A at 10-11. The Panel issued its 19-page Opinion on November 10, 2016 (the "Opinion"). *See* ECF No. 6, Ex. A. The Panel found that Plaintiff had unambiguously exercised

---

[1] *See* ECF No. 6 at 3-4 (detailing individual arbitrators' qualifications and experience).

[2] The Court observes Plaintiff's own appraiser's testimony that he was "not appraising a 231,000 square foot building," and instead was "interpreting the lease into the modern world of valuation" by valuing the Leasehold Estate instead of the Building and Improvements. That is, Plaintiff's appraiser was stating an understanding that the applicable Lease Agreement provision was a valuation of "Building and Improvements" which he was re-interpreting by (in his opinion more appropriately) valuing the "Leasehold Estate". *See* ECF No. 6, Ex. A at 7; ECF No. 6 at 4.

3

its option; both appraisers valued an incorrect property interest; even if the Panel looked to the average of the appraisers' values, it would not be the purchase price because the depreciated book value was greater; and Sears had properly established that book value. ECF No. 6, Ex. A. It awarded Sears $3,937,636 to be paid by Century III on sale/closure to occur within thirty (30) days of the Opinion. Id. at 19.

Century III brought this action on December 9, 2016, ECF No. 1, and filed an Amended Complaint on December 16, 2016 (ECF No. 3). Plaintiff seeks vacatur and a stay of enforcement of the Opinion and maintains that the Panel exceeded its authority by rewriting rather than interpreting the terms of the Lease Agreement. *See* Amended Complaint, ECF No. 3. Plaintiff cites to the Lease Agreement provision that the arbitrators are without power "to change any terms of this Lease or deprive any party of any right provided for herein or modify or extinguish any obligation of either party imposed hereby" and asserts that the Award "cannot be rationally derived from the Lease because it changed the terms of the Lease and deprived Century III of its express rights". *See* ECF No. 3 at 1-2. Currently pending is Sears' Motion to Dismiss, ECF No. 5.

### III. Applicable Standards

#### A. General Standard of Review Applicable to Decision

It is well established that a court's review of an arbitration award governed by the Federal Arbitration Act ("FAA")A is extremely limited and highly deferential. *See generally* ECF No. 6 at 6 (citing Third Circuit cases noting "exceedingly narrow" circumstances under which an arbitration award may be set aside). The FAA provides four (4) grounds for vacatur: (a) procured by corruption, fraud, undue means; (b) evidence of partiality or corruption of an arbitrator; (c) misconduct of an arbitrator in refusing postponement on sufficient cause or refusing to hear pertinent and material evidence, or other misconducting resulting in prejudice; or (d) "where the arbitrators exceeded their power, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." *See* 9 U.S.C. Section 10(a). Plaintiff seeks vacatur under the last provision. As it acknowledges, the Court "must determine if the form of the arbitrator's award can be rationally derived from the agreement at issue." ECF No. 3 at 8 (citing Ario v. Underwriting Memb. of Syndicate 53 at Lloyds for 1998 Year of Account, 618 F.3d 277, 288 (3d Cir. 2010)). Judicial review assesses whether the award made under the evidence presented to the arbitrator's may have been rationally derived from an interpretation of the contract. *See* ECF No. 6 at 7 (citing Sutter v. Oxford Health Plans LLC, 675 F.3d 215 (3d Cir. 2012), *aff'd* Oxford Health Plans v. Sutter, 133 S.Ct. 2064 (2013)); id. at 8; Mutual Fire, Marine, & Inland Ins. Co. v. Norad Reins, Co., Ltd., 868 F.2d 52, 56 (3d Cir. 1989).

The standards of review applicable to the arbitration decision inform this Court's application of the general 12(b)(6) standards to the case and pending motion.

5

### B. General Motion to Dismiss Standards

In deciding a motion to dismiss under Rule 12(b)(6), the Courts apply the following standard, as recently reiterated by the Court of Appeals:

> A complaint may be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted". . . . "To survive a motion to dismiss, a complaint must contain sufficient *factual matter, accepted as true*, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (citation and internal quotation marks omitted) (emphasis added). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n. 27 (3d Cir.2010). Although the plausibility standard "does not impose a probability requirement," *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955, it does require a pleading to show "more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. A complaint that pleads facts "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citation and internal quotation marks omitted). The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679, 129 S.Ct. 1937.

*Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786-87 (3d Cir. 2016).

Building upon the landmark Supreme Court decisions in Twombly and Iqbal, the Court of Appeals in Connelly reiterated the three-step process District Courts must undertake to determine the sufficiency of a complaint:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675, 129 S.Ct. 1937. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679, 129 S.Ct. 1937. *See also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir.2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are *well-pleaded factual allegations, [the] court should assume their veracity* and

> then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937 (emphasis added).

*Id.* at 787. At the motion to dismiss stage, "for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss[,]" but need allege "'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Connelly*, 809 F.3d at 788-89 (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556)) (footnote omitted). As Defendant observes in its Reply Brief in Support of its Motion, ECF No. 11, the Court accepts factual allegations as true.

IV. **Analysis**

Plaintiff complains that the Opinion issued an award based on book value "without proper application of GAAP governing the manner in which such book value was to be calculated." *See* ECF No. 3 at 10. As Defendant notes, the Opinion dedicates numerous pages to the issue of GAAP compliance, with extensive citation to the evidence. As noted *supra*, and in the Opinion, the Lease Agreement specifically provides, in subparagraph 6.3(c), only that "the depreciated book value of Tenant's Building and Improvements" be "computed on a straight line basis in accordance with Tenant's customary method . . . ." But, after expressly stating its belief that "Sears has complied with the Lease", the Panel "nonetheless" went on to dot each "i" and cross each "t". It still considered Plaintiff's assertions regarding GAAP compliance and found them, with explanation both thorough and reasonable, meritless. *See* ECF No. 6, Ex. A at 9-15 (discussing use of book value and calculation).

7

Plaintiff complains that the Opinion "disregarded Century III's appraisal entirely, without regard to the express Lease provisions requiring use and averaging of appraised values." ECF No. 3 at 10. As noted, *supra*, the Panel determined that neither appraisal was valid/in conformance with the Lease Agreement. See ECF No. 6, Ex. A at 6-9 (Opinion's discussion of grounds for finding invalidity of each appraisal). In issuing an award based on depreciated book value it took care to note that the same result would have obtained had it accepted both appraisals. *See* discussion, *supra;* ECF No. 6, Ex. A at 9, n. 3 (stating that "the Award in this case would not change"). *See also* ECF No. 6 at 13-14 (discussing arbitrator's authority, under applicable standard of review, as to weight of evidence, credibility, determinations of fact and law).

Plaintiff also complains that the Opinion "disregarded the entire last clause in Section 6.3(b)(ii) providing that the Landlord may choose not to elect to proceed with the purchase following the 6.3(b)(ii) valuation process." ECF No. 3 at 10. On its face, under any reasonable interpretation, the Lease Agreement provides no such thing. It contains no language suggesting a subsequent "opt-out" from Landlord's written exercise of its option to terminate the lease if it is unhappy with the purchase price valuations. The Panel not surprisingly and eminently reasonably concluded that Century III's letter of November 17, 2014 unambiguously stated that it was exercising its option pursuant to Section 6.3(a)[3] and that the language of 6.3(b) could not "be fairly interpreted to provide the Landlord a second option". *See* ECF No. 6, Ex. A at 5.

Plaintiff's final objection is to the Opinion's interpretation of provisions of the Lease Agreement referring to "Building and Improvements" and "leasehold improvements" in

---

[3] In arbitration, Plaintiff contented that it had expressed an "intent to investigate, then perform its due diligence and decide whether or not to proceed to closing." *See* ECF No. 6, Ex. A at 5.

determining the landlord's elective purchase price on the tenant's cessation of operations. Century III asserts that Section 6.3(b) of the Lease Agreement "sets forth . . . two different transaction prices" depending on whether operations are terminated during or after expiration of the operating covenant. Amended Complaint, ECF No. 3 at 4. It asserts that Section 6.3(b)(i) provides Sears a "more beneficial valuation" including "Building and Improvements" during the first 20 years, but includes only "leasehold improvements", which it interprets as "leasehold interest", "*e.g.*, "carpeting, lighting, cabinets", during the second 20 years "because the value of the leasehold interest to Tenant has declined". Id. at 4-5. The Court notes that Plaintiff offers no rationalization for a dramatic reduction in its purchase price one day after, as opposed to one day prior to, the expiration of the operating covenant.[4] More to the point, Plaintiff offers no reasonable basis for its assertion that the arbitrators exceeded their authority.

As set forth above, Section 6.3(b)(i) directs that Century III pay[5] "Tenant's *depreciated book value of its Building and Improvements* or the appraised fair market value *thereof*, whichever is greater" and that each party appoint an appraiser to determine fair market value, with the arithmetical average "deemed to be the fair market value of Tenant's Building and Improvements. . . ." while 6.3(b)(ii) directs that Century III pay "Tenant's *depreciated book value* or the appraised fair market value of the leasehold improvements made by Tenant,

---

[4] *See* ECF No. 6, Ex A at 7 (Opinion's similar observation that "Century III offers no plausible explanation as to why the purchase price would be different based upon the expiration of the operating covenant.")

[5] The Court notes that, in addressing the amount Landlord is to pay, the contract reflects no contemplation that the tenant's interest would ever be worthless or, as the landlord now asserts, negative $11M. *See* ECF No. 6, Ex. A at 8 (making similar observations).

*determined as in (1) above*, whichever is greater . . . ." *See supra* (emphasis added).[6] The Court notes that once the subject of valuation is identified in clause (b)(i) it is referred back to rather than re-specified. Similarly, clause (b)(ii) does not follow "depreciated book value" with a subject of valuation. It may be reasonably read to be the same "depreciated book value" as in clause (i), and the provision on its face may be read to provide that *each* alternative ("depreciated book value *or* the appraised fair market value . . .") is "determined as in (1) above", *i.e.*, that "depreciated book value" is determined with reference to "Buildings and Improvements". *See* ECF No. 6, Ex. A at 7 (noting that "the valuation to be performed under" both subsections was the same, as indicated by the phrase "determined as in [i] above").

Both of these observations regarding reasonable interpretation of the Lease Agreement provisions are, as noted above, set forth in the Opinion, as is the further observation that the contract provides no definition of "leasehold improvements" – which the arbitrators reasonably understood to be synonymous with "Building and Improvements".[7] *See* ECF No. 6, Ex. A at 6 ("The Lease does not seek a valuation of any particular property interest. It easily could have, but it did not."); id. at 7 ("The term 'Tenant's Leasehold Estate' is a defined term in the Lease,

---

[6] This generally less-than-ideally-drafted post-operating clause subsection concludes by reminding the parties that once the operating covenant is expired, "if Landlord does not elect so to purchase Tenant's Building and Improvements, Tenant may use Tenants' Building for any lawful purpose." *Cf.* Section 6.1(a) (concluding by noting that "[i]f Landlord elects not to so terminate, Landlord and Tenant shall continue to be bound by all the terms and conditions of this Lease").

[7] As Plaintiff observes, Lease Agreement Section 6.1(c) provides the method for computing depreciated book value of "Building and Improvements" but makes no mention of any method for computation of depreciated book value of "leasehold improvement". This is consistent with the arbitrators' conclusion that the latter was a descriptor of the former. *See* ECF No. 3 at 5. *See also* ECF No. 6 at 12 (discussing Opinion and absence of contractual definition of "leasehold improvements").

and if it was intended that that interest was to be valued it could have been so stated."). *Cf.* ECF No. 3 at 10 (object that arbitrators "incorrectly re-wrote the Lease").

For these reasons, Plaintiff's assertions that the Opinion "departed dramatically from the unambiguous terms of the Lease", "exceeded the Arbitrator's authority", and was an "irrational error requiring vacatur", ECF No. 3 at 9, do not pass muster. The Court also refers Plaintiff back to the applicable standard. *Cf.* Defendant's Reply Brief in Support of Motion to Dismiss, ECF No. 11 (discussing distinction in standard of review of decision under the FAA).

## V. Conclusion

For the reasons set forth above, Plaintiff has failed to set forth a claim as a matter of law, and an Order consistent with this Memorandum Opinion, granting Defendant's Motion to Dismiss the Amended Complaint, ECF No. 5, will be entered.

Dated: May 10, 2017          BY THE COURT:

 

LISA PUPO LENIHAN
United States Magistrate Judge